## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KENNETH CLARK,

      Petitioner,

v.

BONITA HOFFNER,

      Respondent,

_____/

Civil No. 2:12-CV-13237
HONORABLE VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Kenneth Clark, ("Petitioner"), confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 through counsel, S. Allen Early.  Petitioner challenges his conviction for first-degree premeditated murder, M.C.L.A. 750.316(1)(a), discharge of a weapon from a vehicle, M.C.L.A. 750.234a, three counts of assault with intent to commit murder, M.C.L.A. 750.83, obstructing a police officer, M.C.L.A. 750.81d, four counts of possession of a firearm in the commission of a felony. M.C.L.A. 750.227b, and being a third felony habitual offender, M.C.L.A. 769.11.

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I.  Background

Petitioner was charged with multiple criminal charges in three separate cases that were consolidated for trial.  A jury convicted Petitioner in Wayne County Circuit Court.

1

This Court recites verbatim the relevant facts relied upon by the Michigan Court of

Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. §

2254(e)(1). *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from a shooting spree on the morning of March 13, 2007. At trial, witnesses testified that they observed a green van stop beside a gray van that was parked outside a parole office in Detroit. The driver of the green van fired a rifle or long gun into the gray van. An occupant of the gray van, Pancho Lawrence, was killed. As the green van drove away, Mark Hoffert, who was waiting inside a vehicle that was parked in front of the gray van, followed the green van and called 911 while in pursuit. Hoffert testified that he followed the van onto a street where it stopped and the driver got out, turned toward Hoffert, and began firing. Hoffert was able to see the shooter's entire body and identified the shooter as defendant. Defendant got back in the green van and again drove off, and Hoffert continued to pursue him. The back window of defendant's vehicle was shot out, and Hoffert was able to see defendant as he fired more shots at Hoffert while driving. Hoffert continued following defendant as he drove through neighborhoods in Hamtramck and Detroit. After turning onto a residential street, defendant stopped his vehicle and Hoffert passed him as defendant again attempted to shoot at Hoffert with a rifle. Hoffert drove behind a building, but then spotted defendant on Healy Street and alerted a 911 dispatcher. The police arrived and several officers participated in a foot chase and pursuit of defendant, during which defendant was shot in the shoulder. Defendant was eventually arrested after the police found him hiding under a porch.

*People v. Clark,* No. 281460, 281461, 281462, Slip. Op. at 2 (Mich.Ct.App. October 21, 2010).

Petitioner's conviction was affirmed on appeal. *Id; lv. den.* 489 Mich. 897, 796

N.W.2d 77 (2011); *reconsideration den.* 490 Mich. 863, 801 N.W.2d 878 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) the

prosecutor committed misconduct at Petitioner's trial; alternatively, trial counsel was

ineffective for failing to object to the misconduct, (2) the trial court erred in denying

Petitioner's motion to suppress an in-court identification as being the product of a prior suggestive identification; alternatively, trial counsel was ineffective for failing to argue critical factors relevant to a *Wade* identification hearing, (3) Trial counsel was ineffective for failing to argue the four critical factors set forth in *Neil v. Biggers* regarding the reliability of eyewitness identifications.  The prosecutor denied Petitioner a fair trial and his right to compulsory process by failing to produce crucial endorsed witnesses at trial. The trial court erred in denying counsel's motion for a missing witness instruction; defense counsel was ineffective for failing to request a due diligence hearing regarding the missing witnesses and at the *Wade* Hearing, (4) defense counsel was ineffective for failing to request a continuance to obtain witnesses and for failing to investigate witnesses, (5) Petitioner was denied his right to compulsory process and was denied his rights when the prosecutor withheld exculpatory evidence, (6) the state district and circuit courts lacked subject matter jurisdiction to arraign or to try Petitioner on the murder charge; alternatively, trial counsel was ineffective for failing to file for a dismissal, and (7) cumulative errors deprived Petitioner of a fair trial.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings

3

unless the adjudication of the claim–

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a

4

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims previously rejected in state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the

5

law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

#### A.  **Procedural Default/Exhaustion**.

Respondent contends that some of Petitioner's claims are barred by procedural default.  Federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U .S. at 525.  The procedural issues are intertwined with the merits of Petitioner's issues and the substantive issues are easier to resolve.  Accordingly, the Court proceeds to the merits of Petitioner's claims.

Respondent contends that some of Petitioner's subclaims are unexhausted because they were not presented to the state courts.  The Court declines to dismiss the petition on the ground that it contains an unexhausted claim.  A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction

6

to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  An unexhausted claim may be addressed if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees,* 822 F. 2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies).  In these circumstances, a federal court should dismiss a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims. *Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991).  Because Petitioner's unexhausted claims lack merit, in the interests of efficiency and justice, the Court will address the claims, rather than dismiss the petition on exhaustion grounds.

### B.  Claim # 1.  Prosecutorial misconduct.

Petitioner claims that he was denied a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief

7

only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997)(quoting *Serra v. Michigan Dep't of Corr.*, 4 F. 3d 1348, 1355 (6th Cir. 1993)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).

Petitioner contends that the prosecutor denigrated the defense during her rebuttal argument by comparing defense counsel's argument to an octopus squirting ink, and referred to the arguments as "red herrings," "smoke screens," and "outrageous."

The Michigan Court of Appeals rejected Petitioner's claim, finding that the argument, when viewed in context, was not a personal attack upon defense counsel but was in response to defense counsel's attempts during his closing argument to discredit the reliability of Hoffert's identification testimony and various aspects of the police investigation. *Clark,* Slip. Op. at 3.

The Sixth Circuit held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee,* 231

8

Fed. Appx. 469, 480 (6th Cir. 2007)(quoting *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992)).  Thus, a prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel. *Id.*  Thus, the terms "smoke screens" and "red herrings" were not improper attacks upon defense counsel, but were simply remarks made by the prosecutor upon the merits of Petitioner's case. *See U.S. v. Graham,* 125 Fed. Appx. 624, 634-35 (6th Cir. 2005).

Petitioner is not entitled to habeas relief on his claim that the prosecutor improperly denigrated defense counsel, because even if the prosecutor's comments about Petitioner's defense were improper, they were not flagrant enough to justify habeas relief. *See Henley v. Cason,* 154 Fed. Appx. 445, 447 (6th Cir. 2005).  The prosecutor's sarcastic comments were not so incendiary so as to inflame the jury's passion or distract them from determining Petitioner's guilt or innocence. *See Davis v. Burt,* 100 Fed. Appx. 340, 348 (6th Cir. 2004).  Finally, the prosecutor's remarks were brief and fairly isolated and were part of a larger twenty one page argument that focused on the evidence in the case. (Tr. 8/10/07, pp. 3-19, 43-46).   The trial court instructed the jury that the lawyers' arguments were not evidence. (*Id.,* p. 48).  The prosecutor's remarks were relatively isolated, were not extensive, and were only a small part of a closing argument that focused heavily on summarizing the evidence presented at trial. *Byrd v. Collins*, 209 F. 3d 486, 532 (6th Cir. 2000).  When combined with the instruction from the trial judge that the attorneys' arguments, questions, and statements were not evidence, the prosecutor's

9

comments did not render the entire trial fundamentally unfair. *Id.* at 533.

Petitioner claims that the prosecutor shifted the burden of proof by arguing that Petitioner could have called Darryl Ford, Travante Norris, and Lawrence Guyden as witnesses if he thought they could offer helpful information.

The Michigan Court of Appeals rejected Petitioner's claim, on the ground that the prosecutor's remarks were in response to defense counsel's closing argument in which counsel questioned the prosecutor's decision for not calling these witnesses. *Clark,* Slip. Op. at 3.

The trial court instructed the jury that Petitioner was presumed innocent and that the prosecutor had the burden of proving Petitioner's guilt beyond a reasonable doubt. The judge also instructed the jurors that the attorneys' arguments were not evidence. (Tr. 8/10/07, pp. 47-48). The prosecution's argument did not deprive Petitioner of a fair trial, because the remarks were made in response to defense counsel's argument and any possible prejudice which might have resulted from the isolated comment was cured by the trial court's instructions regarding the proper burden of proof and that the attorneys' arguments were not evidence. *See Spencer v. Elo,* 80 Fed. Appx. 389, 391 (6th Cir. 2003).

Petitioner, however, also claims that the prosecutor's remarks were misleading in that the defense was unable to subpoena these witnesses, because the prosecutor violated the discovery order by refusing to turn over the names and addresses of witnesses to the defense.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error

10

because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(quoting *Donnelly v. DeChristoforo*, 416 U.S. at 646).

The prosecutor's remarks were not misleading, because Petitioner's counsel was afforded an opportunity to meet with the witnesses, interview them, and have them subpoenaed for trial if he chose. The prosecutor indicated at the preliminary examination she had received information that some witnesses had been threatened. (Tr. 4/25/07, p. 20). Under Michigan law, the prosecutor had the authority not to disclose the witnesses's addresses but could instead provide the defense with the names of the witnesses and make them available to the defense to be interviewed. *See* M.C.R. 6.201(A)(1). The prosecutor provided defense counsel with the opportunity to meet and interview the witnesses named on the prosecution witness list but counsel never asked the prosecutor to set up any meetings. (Tr. 4/25/07, pp. 19-20; Tr. 10/1/07, pp. 66-67).

Petitioner was afforded an opportunity to interview the various witnesses and ask for the prosecutor to subpoena them for trial. Because there was at least some factual support on the record for the prosecutor's argument that Petitioner could have called these witnesses to testify at trial, the prosecutor's remarks did not deprive Petitioner of a fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).

Petitioner claims that the prosecutor improperly appealed to the sympathies of the jurors. Petitioner failed to offer any argument to explain how the prosecutor improperly appealed to the jurors' sympathies. Conclusory allegations of prosecutorial misconduct

11

fail to state a claim upon which habeas relief can be granted. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004). Petitioner is not entitled to habeas relief on his first claim.

### C. Claim # 2. Suggestive identification.

Petitioner claims that the trial judge erred in failing to suppress the in-court identifications of Mark Hoffert and Patrick Bost as being the product of a suggestive identification procedure.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)). Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200.

12

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992).

Petitioner claims that Hoffert's in-court identification was tainted because Hoffert first identified Petitioner at the preliminary examination without having first identified Petitioner in a live line-up.

The mere fact that petitioner may have been identified by Hoffert at the preliminary examination does not make the identification procedure unreliable or unnecessarily or impermissibly suggestive. In *Baker v. Hocker*, 496 F. 2d 615, 617 (9th Cir. 1974), the Ninth Circuit held that a robbery victim's identification of the defendant at a preliminary hearing, after having failed to identify him at a police lineup, was not unnecessarily or impermissibly suggestive, even though the petitioner in that case was seated at the preliminary hearing next to the two co-defendants whom the victim had previously identified, thereby suggesting that petitioner was the third robber. In rejecting the claim, the Ninth Circuit admitted that any in-court identification confrontation, whether at a preliminary hearing or at trial, "carries with it the stigma of the inevitable suggestion that the state thinks the defendant has committed the crime." *Id.* at 617. However, the Court ruled that more than suggestion is required for a due process

13

violation.  The procedure must create 'unnecessary' or 'impermissible' suggestion.  *Id.*

Assuming that the pre-trial identification procedures were unduly suggestive, Petitioner failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification.  Hoffert had several opportunities to view Petitioner during the initial shooting in front of the parole office, during the subsequent car chase, and later when Petitioner shot at Hoffert.  Hoffert was focused on Petitioner during the incident.  Hoffert's description of the shooter closely matched Petitioner's appearance.  Hoffer identified Petitioner with a high degree of certainty and had no doubt that he was the shooter.

These factors all support a finding that an independent basis existed for Hoffert's in-court identification of Petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001).  Moreover, with respect to Hoffert's attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v Bouchard,* 405 F. 3d 459, 473 (6th Cir. 2005); *See also United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001)(finding heightened degree of attention where robber confronted witnesses with a gun).  In light of the fact that Hoffert witnessed a shooting at a parole office and was subsequently shot at himself, it was not unreasonable to conclude that Hoffert paid a high degree of attention to his assailant.

Even if there were slight discrepancies between Hoffert's initial description of the suspect and Petitioner's appearance, this would be insufficient to render the in-court

14

identification suspect, in light of the fact that Hoffert was able to get a good look at

Petitioner and testified that he was certain in his identification of petitioner as being the

suspect. *See United States v. Hill,* 967 F. 2d at 232-33.

Finally, the reliability of Hoffert's in-court identification is supported by the fact

that he testified that he was "one hundred percent" certain that Petitioner was the

shooter. (Tr 8/7/07, p. 50). *Howard,* 405 F. 3d at 473.

Petitioner claims that Patrick Bost's in-court identification was defective because

he only identified Petitioner for the first time at trial and was not completely certain in

his identification of Petitioner being the shooter.

Petitioner failed to show that Bost's in-court identification was the product of a

suggestive pre-trial identification.  Indeed, "the Supreme Court has never held that an

in-court identification requires an independent basis for admission in the absence of an

antecedent improper pre-trial identification." *Cameron v. Birkett,* 348 F. Supp. 2d 825,

843 (E.D. Mich. 2004).  Moreover, "the Due Process Clause does not require a

preliminary judicial inquiry into the reliability of an eyewitness identification when the

identification was not procured under unnecessarily suggestive circumstances arranged

by law enforcement." *Perry v. New Hampshire*, 132 S. Ct. 716, 730 (2012).  There is no

suggestion that Bost was subjected to a suggestive pre-trial identification; accordingly,

Bost's in-court identification of Petitioner does not entitle him to habeas relief.

### C.  Claims # 3 and # 5.  The missing witnesses.

Petitioner contends that he was denied his right to compulsory process and his

15

right to present a defense when the prosecutor failed to produce five endorsed *res gestae* witnesses for trial and withheld the names and addresses of these witnesses.

Petitioner claims that the prosecutor failed to produce five endorsed *res gestae* witnesses for trial and failed to exercise due diligence in locating them for trial.

Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler,* 419 Fed. Appx. 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192 (Table), 1988 WL 87710, * 2 ( 6th Cir. August 24, 1988)(citing to *United States v. Bryant*, 461 F. 2d 912, 916 (6th Cir. 1972)). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier,* 419 Fed. Appx. at 559.

Petitioner is correct that a prosecutor has a duty to disclose exculpatory evidence to the defense. To prevail on such a claim, Petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,*

16

373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388 (6th Cir. 2002).

Likewise, to establish a violation of the Sixth Amendment constitutional right to compulsory process, a defendant must make a plausible showing of how the witness' testimony would have been both material and favorable to the defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). A defendant is required to make the same showing for a Fifth Amendment due process violation. *Id.* at 873.

Petitioner failed to show that any of these five witnesses would have offered exculpatory evidence. Lawrence Guyden testified at the preliminary examination that he did not see the shooter at the parole office and did not know Petitioner. (Tr. 4/25/07, pp. 81, 90). Travante Norris told the police that he did not know who might have shot at him nor did he even see the shooter. The jury heard evidence that the police had investigated Darryl Ford as a possible suspect and heard their reasons for releasing him. Other than

Officer Abdella's assumptions, there was no evidence that a second shooter was involved in any of the shootings. (Tr. 8/9/07, pp. 8-10).  Although Jennifer Rigley and Maureen Kelly were present at the parole office at the time of the shooting and gave descriptions of the shooter, there was no indication that they could actually positively identify the shooter.  More specifically, there was no indication that they would positively state that Petitioner was not the person involved in the shooting.  Finally, Guydon, Norris, Rigley, and Kelly were not present when Petitioner shot at Hoffert or at the police and would have been unable to offer exculpatory evidence with respect to these charges.  The prosecutor's failure to produce these witnesses at trial did not deprive Petitioner of his right to present a defense or to compulsory process.

The Court rejects Petitioner's related instructional error claim.  A habeas petitioner is entitled to relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  A federal court may not grant habeas relief on the ground that a jury instruction was incorrect under state law, *Estelle*, 502 U.S. at 71-72, and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

A criminal defendant does not have a clearly established federal right to a missing witness instruction.  Petitioner therefore cannot obtain federal habeas relief based on the state court's failure to give an instruction to his jury regarding the prosecution's failure to produce the endorsed witnesses. *See Stadler v. Curtin,* 682 F. Supp.2d 807, 821-22

18

(E.D. Mich. 2010).

### D.  Claims # 1, # 2, # 3, # 4, and # 6.  Ineffective assistance of counsel.

Petitioner contends he was denied the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient

19

performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel' s actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

20

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over six years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner claims that trial counsel was ineffective for failing to object to the prosecutor's misconduct.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different.  *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  The Court determined that the prosecutor's comments did not deprive Petitioner of a fundamentally fair trial; Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006).

Petitioner claims that trial counsel was ineffective for failing to argue at a pre-trial suppression hearing the four factors contained in *Neil v. Biggers, supra* to establish that

21

Hoffert's pre-trial identification of Petitioner was unduly suggestive.  Counsel argued at the pre-trial suppression hearing the factors that made the pre-trial identification suggestive. (Tr. 7/31/07, pp. 8-9, 11, 52-53, 58).  More importantly, Hoffert had an independant basis for his in-court identification of Petitioner.  In light of the fact that Hoffert's identification of Petitioner was independently reliable, Petitioner was not prejudiced by any alleged failure by trial counsel to adequately challenge Hoffert's in-court and out-of-court identifications on the basis that the pre-trial identification was suggestive. *See Howard v. Bouchard,* 405 F. 3d at 481-85.

Petitioner contends that trial counsel was ineffective for failing to object to Patrick Bost's in-court identification of Petitioner.  Petitioner failed to show that Bost's in-court identification was unduly suggestive; he thus failed to show that his lawyer was ineffective for failing to move for suppression of Bost's in-court identification of Petitioner. *See Perkins v. McKee,* 411 F. Appx. 822, 833 (6th Cir. 2011).

Petitioner contends that trial counsel was ineffective for failing to request the production of the five missing endorsed *res gestae* witnesses or to request a due diligence hearing concerning the prosecutor's failure to produce these witnesses. Petitioner failed to show that these witnesses would have offered favorable testimony to the defense, therefore, counsel was not ineffective for failing to seek the production of these witnesses or for failing to demand a due diligence hearing. *See Greene v. Lafler*, 447 F. Supp. 2d 780, 793 (E.D. Mich. 2006).  In addition, trial counsel's decision to forego requesting the production of Guydon, Norris, and Ford may have been reasonable

22

trial strategy because it lead to the dismissal of charges against Petitioner regarding Guydon and Norris and permitted trial counsel to use Ford's absence at trial to attack the integrity of the police investigation and the strength of the prosecution's case.  Trial counsel's decision to capitalize on the witnesses' absence, rather than to request the production of these witnesses or to ask for an adjournment until the witnesses could be produced, was a matter of reasonable trial strategy that defeats Petitioner's claim. *See Collier,* 419 Fed. Appx. at 560-61.

Petitioner claims that trial counsel was ineffective for failing to move for the dismissal of the murder charge on the ground that the trial court lacked subject matter jurisdiction because he was not properly arraigned on the charge.

"An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980)(citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)); See also *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886).  The Supreme Court held that "[T]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred*." INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).  Although the exclusionary rule prohibits the introduction at trial of evidence that was seized in violation of the constitution, a criminal defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through

23

the introduction of evidence wholly untainted by the police misconduct." *United States v. Crews*, 445 U.S. at 474.

Petitioner does not identify any evidence other than his own body that was seized during this allegedly unlawful arrest.  Thus, the mere fact that Petitioner may have been arrested without probable cause or improperly arraigned would not prevent him from being prosecuted and convicted of this offense.  Failing to file a frivolous motion to dismiss does not constitute ineffective assistance of counsel. *See Goldsby v. U.S.,* 152 Fed. Appx. 431, 438 (6th Cir. 2005).   A challenge to the legality of Petitioner's arrest would not have resulted in his release from custody.  Counsel was not ineffective for failing to file a motion to dismiss on this basis. *See Friday v. Pitcher,* 200 F.Supp. 2d 725, 738-39 (E.D. Mich. 2002).

Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### E.  Claim # 6.  Jurisdiction.

Petitioner claims that the trial court lacked subject matter jurisdiction over his murder charge because of a defective arraignment or complaint.

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler,* 532 F. 2d 1058, 1059 (6th Cir. 1976); *See also Daniel v. McQuiggin,* 678 F.Supp. 2d 547, 553 (E.D. Mich. 2009).  The Sixth Circuit noted that "[a] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for

24

purposes of federal habeas review." *Strunk v. Martin*, 27 Fed. Appx. 473, 475 (6th Cir. 2001). Petitioner's claim that the trial court lacked jurisdiction to try his case raises an issue of state law, because it questions the interpretation of Michigan law, and is therefore not cognizable in federal habeas review. *See United States ex. rel. Holliday v. Sheriff of Du Page County, Ill.,* 152 F. Supp. 1004, 1013 (N.D. Ill. 2001); *Cf. Toler v. McGinnis,* 23 Fed. Appx. 259, 266 (6th Cir. 2001)(district court lacked authority on habeas review to review petitioner's claim that the state court erred in refusing to instruct jury on the requirements for extraterritorial jurisdiction, because the claim was contingent upon an interpretation of an alleged violation of state law).

### F. Claim # 7. Cumulative error.

Petitioner argues that he is entitled to habeas relief based on cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005). Petitioner is therefore not entitled to habeas relief on the grounds of cumulative error. *Id.*

### IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that

reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's

26

resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of Appealability**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 28, 2014

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 28, 2014.

S/Carol A. Pinegar
Deputy Clerk

27